UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

THE STATE OF NEW YORK and
GEORGE E. PATAKI, as Governor of
the State of New York,

                              Plaintiffs,

        -against-                                    1:95-CV-554
                                                      (LEK/RFT)
THE ONEIDA INDIAN NATION
OF NEW YORK,

                              Defendant.

---

### MEMORANDUM-DECISION AND ORDER

        The State and Governor of New York (collectively, "Plaintiffs"), filed this action in April,

1995 to enjoin Defendant, the Oneida Indian Nation of New York ("Defendant" or the "Nation"),

from offering an electronic video game called Instant Multi Game ("IMG") at its Turning Stone

Casino ("Turning Stone"). See Compl. (Dkt. No. 1); Amended Compl. (Dkt. No. 106). Presently

before the Court are Plaintiffs' Motions for judgment on the pleadings (Dkt. No. 159) and to dismiss

the amended counterclaim (Dkt. No. 161). Also before the Court is Plaintiffs' Appeal of a

discovery order allowing the Nation to depose two former officials in the Pataki administration

(Dkt. No. 143). For the following reasons, the Motions are denied and the Appeal is denied and

dismissed.

I.      **Background**

        A.      **Factual Background**

        The Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 -2721 ("IGRA" or the "Act"),

establishes a regulatory framework for Indian gaming.  The Act establishes three categories of

Indian gaming: Class I encompasses social games for prizes of minimal value or traditional forms of

Indian gaming; Class II includes high-stakes bingo and certain card games; and Class III, which

includes all other forms of gaming, including casino-type gaming, not already defined as Class I or

Class II gaming.  See 25 U.S.C. § 2703.  Class III gaming activities are lawful on Indian lands if

they are "conducted in conformance with a Tribal-State compact entered into by the Indian tribe and

the State under paragraph (3) that is in effect."  25 U.S.C. § 2710(d)(1)(C).  Under the Act, a state

and an Indian tribe may enter into a compact governing gaming activities on Indian land; the

compact only takes effect when notice of approval by the United States Secretary of the Interior is

published in the Federal Register.  25 U.S.C. § 2710(d)(3)(B).

In April, 1993, the State of New York (the "State") and the Nation entered into a compact,

pursuant to the IGRA, governing Class III gaming on the Nation's lands (the "Compact").

Amended Compl. (Dkt. No. 106) at ¶ 14.  The Assistant Secretary for Indian Affairs approved the

Compact, and the approval was published in the Federal Register on June 15, 1993.  Id.  The

Compact provides that the Nation may conduct those games and activities set forth in Appendix A

to the Compact.  Id. at ¶ 16.  The Compact also outlines procedures through which the Nation could

seek to amend Appendix A and conduct additional games at Turning Stone.  Id. at ¶ 18.  To request

additions to Appendix A, the Nation must "submit[] written specifications to the State."  Id.  The

Compact defines "State" to mean "the State of New York, its authorized officials, agents,

representatives or agencies acting in their official capacities."  Id. at ¶ 15.  The Compact specifies

that the "State shall exercise its regulatory and oversight role under the Compact through its State

Racing and Wagering Board" (the "Board").  Id. at ¶ 16.  All notices and other communications

required under the Compact were to be served on the Board's Chairman.  Id. at ¶ 19.

On November 22, 1994, the Nation submitted a written request to the Board's Chairman seeking approval to add IMG to Appendix A.  Id. at ¶ 23.  A letter from the Board's Chairman, on November 23, 1994, informed the Nation that the Board had approved the amendment to Appendix A related to IMG.  Id. at ¶ 24.  After providing State officials with an opportunity to inspect IMG, the Nation began offering IMG at Turning Stone on March 10, 1995.  Id. at ¶ 31.  Also on March 10, 1995, Bradford J. Race, Jr., Secretary to then-newly-elected Governor George E. Pataki, sent a letter to the Nation asserting the State's position that IMG was not authorized under Appendix A. Id. at ¶ 33.

**B.    Plaintiffs' Claims**

Plaintiffs' first claim alleges that the Nation's operation of IMG at Turning Stone violates the terms of the Compact because the State did not properly approve IMG's deployment.  Id. at ¶¶ 40-42.  Plaintiffs explain that all amendments to the Compact must be approved by the State and the State, acting through the Governor or his authorized representative, must issue such approvals.  Id. at ¶ 37.  According to Plaintiffs, on or about January, 1994, then-Governor Mario Cuomo transferred responsibility for negotiation of any amendments to existing State-Tribal compacts to the Director of the Office of Industry and Community Relations in the Department of Economic Development, who, at the time relevant to the present action, was Patrick E. Brown.  Id. at ¶¶ 20, 38.  Plaintiffs contend that by not obtaining approval for operating IMG from Brown or the Governor, the proposed amendment to add IMG has not been approved by the State and, accordingly, the Nation violated the Compact.  Id. at  ¶¶ 39-42.

Plaintiffs alternatively plead in their second claim for relief that even if the Board was

3

authorized to approve an amendment to the Compact, that authority rested with the full three-member Board and could not be delegated to the Chairman or any individual employee of the Board.  Id. at  ¶¶ 44-45.  Plaintiffs assert that the Nation knew or should have known that, despite the letter from the Board's Chairman, the entire Board never approved the amendment and thus, the Nation violated the terms of the Compact by operating IMG without the proper approval.  Id. at  ¶¶ 48-52.

### C.   Nation's Affirmative Defenses and Counterclaims

In its Answer to the Amended Complaint, the Nation asserts that the November 23, 1994 letter from the Board's Chairman properly approved the amendment to Appendix A adding IMG to the games approved for operation at Turning Stone under the Compact.  Answer (Dkt. No. 151) at Section A,  ¶¶ 18, 37, 53.  The Nation specifically disputes Plaintiffs' allegations that: the Board lacked authority to approve the additions of new games; only the Governor or his designated representative could approve the additions of new games; Brown had authority to negotiate amendments to existing compacts or their appendices; and the Board's Chairman did not have authority to approve IMG.  Id.

The Nation also asserts a number of affirmative defenses; those defenses not yet addressed by the Court are: (1) that the Board had actual or apparent authority to approve the addition to Appendix A; (2) Plaintiffs waived the claim they seek to assert and are estopped from asserting it; (3) Plaintiffs' claim is barred by the doctrine of laches; and (4) Plaintiffs did not negotiate in good faith, in violation of IGRA.  Answer (Dkt. No. 151) at Section B,  ¶¶ 4-8.

The Nation's Second Amended Counterclaim (the "Counterclaim") seeks a declaration that IMG and another game, identified as "Gaming Devices," have been added to Appendix A in

4

accordance with the procedures established in the Compact.  Counterclaim (Dkt. No. 151) at ¶ 1.  In

the alternative, the Nation seeks a declaration, and an award of relief pursuant to 25 U.S.C. §

2710(d)(7)(A)-(B), that the State has negotiated in bad faith with respect to requests to add these

games and has refused to agree to them only because the Nation will not give the State a percentage

interest in the games' revenue.  Id.

## II.      Discussion

### A.      Motion for Judgment on the Pleadings

Plaintiffs argue in their Motion for judgment on the pleadings that a recent decision by the

New York Court of Appeals, Saratoga County Chamber of Commerce, Inc. v. Pataki, 100 N.Y.2d

801 (2003), striking down the State's 1993 tribal gaming compact with the St. Regis Mohawk Tribe

("Mohawk Tribe"), establishes that the Board does not have authority to allow new games under the

Compact.  Plntfs' Mem. in Support (Dkt. No. 159, Attach. 2) at 11.  Plaintiffs claim that Saratoga

County means that the Board cannot promulgate new regulations necessary to perform this task

without legislative authorization.  Id.  In response, the Nation asserts that its pleadings adequately

deny the claims made by Plaintiffs in their Amended Complaint.  Nation's Mem. In Opp. (Dkt. No.

163, Attach. 1) at 11.  The Nation also contends that Plaintiffs' Motion presents a claim distinct

from the two claims advanced in the Amended Complaint, and that the *Federal Rules of Civil*

*Procedure* do not allow judgment on claims that were not pleaded.  Nation's Mem. In Opp. (Dkt.

No. 163, Attach. 1) at 11.

### 1.      Standard of Review

Federal Rule of Civil Procedure 12(c) permits any party to move for judgment on the

pleadings after the pleadings are closed.  FED. R. CIV. P. 12(c).  The standard for granting a motion

for judgment on the pleadings is the same as that under a motion for failure to state a claim: the Court must accept all allegations in the Amended Complaint as true and draw all inferences in favor of the non-moving party, in this case, the Nation.  See Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001).  However, when considering a Rule 12(c) motion, the Court does not need to accept legal conclusions or characterizations contained in the non-moving party's pleadings.  Madonna v. United States, 878 F.2d 62, 65 (2d Cir. 1989).  The Court cannot grant judgment on the pleadings if a material issue of fact remains in dispute.  See B.F. Goodrich v. Betkoski, 99 F.3d 505, 530 (2d Cir. 1996).

### 2.     The Court Will Consider the Claim Advanced in Plaintiffs' Moving Papers

The *Federal Rules of Civil Procedure* establish "extremely permissive" pleading standards. Wynder v. McMahon, 360 F.3d 73, 77 (2d Cir. 2004).  Plaintiffs are only required to plead a short and plain statement of their claim that gives the Nation fair notice and the grounds upon which the claims rests.  See Fed. R. Civ. P. 8.  This requirement does not require Plaintiffs to explicitly establish their legal theory, but simply plead their factual allegations.  Wynder, 360 F.3d at 77 ("federal pleading is by statement of claim, not by legal theory") (internal quotation omitted).

In the Amended Complaint, Plaintiffs' basic claim is that the Nation's operation of IMG at Turning Stone violates the terms of the Compact because the Board did not have authority to approve IMG's deployment on the State's behalf.  See Amended Compl. (Dkt. No. 106).  Plaintiffs' allegation clearly establishes their claim that the Board could not approve an amendment to the Compact, and, therefore, provided the Nation with notice of the grounds on which its claim rests.  In their moving papers, Plaintiffs now asserts that recent court decisions hold that the New York State

Legislature never properly empowered the Board to amend tribal gaming compacts.  See Plntfs'

Mem. in Support (Dkt. No. 159, Attach. 2) at 11.  This legal theory supports Plaintiffs' claim that

the Board lacked the authority to approve the deployment of IMG, which is an argument in keeping

with Plaintiffs' allegations and could have been anticipated by the Nation from the Complaint.

However, the Amended Complaint does not plead a claim challenging the validity of the entire

Compact, and the Court does not understand Plaintiffs to have moved for judgment on the basis of

such a claim.

### 3. The Court Does Not Have Jurisdiction to Address Plaintiffs' Challenge in its Motion to Board's Authority

#### i. Under 25 U.S.C. §2710(d)(7)(A)

While Plaintiffs' Amended Complaint does encompass their new legal theory, as a court of

limited jurisdiction, the Court must first establish that jurisdiction has been established over the new

theory.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998).  The Nation asserts that

Plaintiffs' argument based on Saratoga County and Peterman v. Pataki, No. 99-0520, 2004 WL

2222278 (N.Y. Sup. Ct. June 25, 2004), asks the Court to determine whether the New York State

Legislature authorized the Board to approve IMG - regardless of the terms of the Compact.

Nation's Mem. In Opp. (Dkt. No. 163, Attach. 1) at 15.  Therefore, according to the Nation, this

argument does not allege a violation of the Compact and seek to enforce the Compact terms, and the

Court cannot exercise jurisdiction over it pursuant to section 2710(d)(7)(A)(ii).  Id.  The Court

agrees with the Nation.

The IGRA confers jurisdiction on district courts in three (3) instances: (1) for "any cause of

action initiated by an Indian tribe arising from the failure of a State to enter into negotiations with

7

the Indian tribe . . . or to conduct such negotiations in good faith," (2) for "any cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact," or (3) for "any cause of action initiated by the Secretary to enforce the procedures" prescribed in the IGRA.  25 U.S.C. § 2710(d)(7)(A)(i)-(iii).  In the instant action, the State has initiated a cause of action against the Nation.  Therefore, the Court may only exercise jurisdiction over the State's Motion for judgment on the pleadings under the second jurisdictional option.  Accordingly, the Court has jurisdiction over the State's claims as long as those claims seek to enjoin class III gaming conducted in violation of the Compact.

Plaintiffs' new legal theory does not seek to enjoin conduct in violation of the Compact.  In Saratoga County, the New York Court of Appeals found that Governor Cuomo violated the principle of separation of powers under the New York State Constitution when he negotiated and signed a gaming compact with the Mohawk Tribe without legislative authorization or approval.  See Saratoga County, 100 N.Y.2d at 822-24.  In addition, the Court of Appeals specifically held that the Board is a "creature" of the Legislature and, as such, cannot promulgate regulations for the oversight of casino gambling without legislative oversight.  Id. at 823.  In Peterman, New York Supreme Court Justice McCarthy found, based on  Saratoga County, that Governor Cuomo had also unilaterally entered into the Compact with the Nation, in violation of the separation of powers doctrine, and, as a result, invalidated the Compact.  Peterman, 2004 WL 2222278, at *6.  As a consequence, Plaintiffs assert, "Saratoga County establishes that the Board does not have authority to allow new games under the Compact.  Consequently, it is plain that as a matter of law, IMG was not approved on behalf of the State and has not been properly authorized."  Plntfs' Mem. in Support (Dkt. No. 159, Attach. 2) at 11.

Plaintiffs' theory does not address a violation of the contents of the Compact. The plain language of the IGRA only confers jurisdiction on the district court when a state sues an Indian Tribe for class III gaming activities "conducted in violation of any Tribal-State compact." See 25 U.S.C. § 2710(d)(7)(A)(ii). Plaintiffs argue that the Board did not have authority to approve IMG, based not the terms of the Compact, but instead on precedents that invalidate gaming compacts; this does not refer to allegations that the Compact did not authorize the Board to authorize amendments to the Compact. Accordingly, the Court does not have jurisdiction to hear a claim not based on the terms of the Compact and denies Plaintiffs' Motion for judgment on the pleadings based on this legal theory. See Wisconsin v. Ho-Chunk Nation, 463 F.3d 655, 660-662 (7th Cir. 2006) (The State of Wisconsin and Ho-Chunk Nation entered a gaming compact and, when a dispute arose, Wisconsin sued the tribe to compel arbitration. The United States Court of Appeals for the Seventh Circuit found that the federal courts did not have jurisdiction because Wisconsin's complaint did not present "any claim for a violation of the IGRA, require an interpretation of the IGRA, encompass any of the situations for which the IGRA confers jurisdiction, or even require the district court to address a breach of the compact that was formed pursuant to the IGRA."); see also United State ex rel. St. Regis Mohawk Tribe v. President R.C-St. Regis Management Co., 451 F.3d 44, 51 (2d Cir. 2006) (The Second Circuit denied a tribe judicial review of a contract because it failed to exhaust the administrative remedies established in the IGRA. The court stated that the "IGRA confers original federal district court jurisdiction only in limited circumstances not presented here. That Congress outlined specific circumstances in which district courts have original jurisdiction strongly suggests its intent to channel all other matters through the normal process of judicial review of final agency action under the Administrative Procedure Act ('APA').").

9

### ii.     Under 18 U.S.C. § 1166

In their Reply, Plaintiffs also seek to invoke federal question jurisdiction under 18 U.S.C. § 1166, which provides criminal penalties for violations of the IGRA.  See Plntfs' Reply (Dkt. No. 175) at 10-12.  Section 1166 incorporates state law pertaining to licensing, regulation, or prohibition of gambling, including criminal sanctions, as the federal law governing gaming in Indian country. 18 U.S.C. § 1166(a).  There is some question as to whether section 1166 grants the State jurisdiction to bring civil actions seeking to enforce state gambling laws in Indian country.  However, Plaintiffs' Amended Complaint only seeks to enjoin the Nation from operating IMG based on its failure to adhere to the procedures in the Compact.  See Amended Compl. (Dkt. No. 106) at ¶¶ 35-52. Plaintiffs do not invoke the State's laws pertaining to gambling, nor do they allege any violations of those laws; without pleading claims related to these statutes, Plaintiffs cannot claim jurisdiction under 11 U.S.C. § 1166.

### 4.     Affirmative Defenses

The Nation contends that Plaintiffs' attack on its affirmative defenses should be construed as a motion to strike the defenses pursuant to Federal Rule of Civil Procedure 12(f).  Nation's Mem. In Opp. (Dkt. No. 163, Attach. 1) at 21.  However, Plaintiffs state that there is no basis for treating the instant Motion as a motion to strike.  Plntfs' Reply (Dkt. No. 175) at 13.  Plaintiffs explain that the Court could only grant their Motion for judgment on the pleadings if "the affirmative defenses raised in answer are legal insufficient."  Id. (internal quotations omitted).  The Court agrees with Plaintiffs that they have not moved to strike the Nation's affirmative defenses.  Instead, the Court understands that Plaintiffs' Motion sought to demonstrate that the affirmative defenses were not legally sufficient to prevent the Court from granting the Motion.  However, the Court has found that

10

it does not have jurisdiction over the claim asserted by Plaintiffs in their Motion for judgment on the pleadings.  Therefore, the issue regarding the legal sufficiency of the affirmative defenses, relative to the claim asserted in the Motion, is now moot.

**B.      Motion to Dismiss the Amended Counterclaim**

Plaintiffs have also moved to dismiss the Nation's two counterclaims.  See Motion to Dismiss (Dkt. No. 161).  Plaintiffs argue that, absent the State's consent or congressional abrogation of the State's sovereign immunity, under the Eleventh Amendment to the United States Constitution they are immune from suit by the Nation.  Plntfs' Mem. in Support of Dismissal (Dkt. No. 161, Attach. 2) at 6-13.  Additionally, Plaintiffs assert that the Nation cannot allege any fact that would support the counterclaims and entitle the Nation to relief.  Id. at 13-24.  In response, the Nation asserts that the State waived its immunity from suit when it: (1) initiated this action; (2) agreed to sections 14(a) and 15(b)(4) of the Compact; and (3) participated voluntarily in the federal regulatory scheme created by the IGRA.  See Nation's Mem. in Response (Dkt. No. 164, Attach. 1) at 12-17. The Nation further asserts that it has alleged facts that adequately support its counterclaims and entitle it to relief.  Id. at 18-23.

**1.      Sovereign Immunity**

The Eleventh Amendment bars suits by Indian tribes against states when the state has not consented to suit and there is no clear congressional abrogation of the state's sovereign immunity. Blatchford v. Native Vill. of Noatak, 501 U.S. 775, 779-87 (1991).

**i.      The State Has Waived its Immunity by Filing Suit Against the Nation**

The doctrine of waiver by litigation holds that a state may waive its Eleventh Amendment

immunity by bringing suit in federal court.  See Ossen v. Dep't of Soc. Servs. (In re Charter Oak Assocs.), 361 F.3d 760, 767 (2d Cir. 2004).  The United States Supreme Court has consistently found that "'where a [s]tate *voluntarily* becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment.'"  Lapides v. Bd. of Regents, 535 U.S. 613, 619 (2002) (quoting Gunter v. Atlantic Coast Line R. Co., 200 U.S. 273, 284 (1906)).  The issue before the Court is whether Plaintiffs' initiation of this action amounts to a waiver of the State's immunity to the Nation's counterclaims.

As a result of the waiver-by-litigation doctrine, the courts have found in certain situations that states waive their immunity to compulsory and permissive counterclaims.  See In re Charter Oak Assocs., 361 F.3d at 768-69.  The Second Circuit has noted that most federal courts of appeal agree that when a state files a proof of claim in a bankruptcy case, it waives its immunity at least to compulsory counterclaims.  Id. at 768 (collecting cases).  In re Charter Oak Assocs. extended the waiver-by-litigation doctrine in the Second Circuit to allow permissive counterclaims against a state when a state has filed a proof.  Id. at 769-71.  In reaching this decision, the Circuit reasoned that fairness and consistency concerns weighed in favor of allowing permissive counterclaims against states that sought to reap benefits as a creditor from the debtor's estate while also seeking to withhold debts owed to the estate, which would be a distinct and unfair advantage over other creditors.  Id. at 769.  In addition, the Circuit explained that once a state has voluntarily submitted itself to a court's jurisdiction, there is less worry about the need to prevent the state from being "subjected to the 'indignity' of being haled into court," which is the "preeminent purpose of state sovereign immunity."  Id. (quoting and citing Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S.

12

743, 760 (2002)).

Nevertheless, the decision in In re Charter Oak Assocs. suggests that there are limitations on what counterclaims against a state should be allowed.  The Circuit explicitly did not reach the question of whether the Eleventh Amendment requires counterclaims to be capped by a setoff limitation in a bankruptcy case, though the counterclaim that was allowed to proceed was so limited by section 106 of the Bankruptcy Code.  In re Charter Oak Assocs., 361 F.3d at 768 n.4.  However, the Circuit did note that "while it may well be contrary to the doctrine of state sovereign immunity to allow a debtor to assert permissive counterclaims that might result in an affirmative recovery from the state, when the state asserts a claim in federal court, its immunity does not protect against the assertion of counterclaims to the extent they would reduce or defeat the state's claim."  Id. at 769.  Consistent with this rationale, Plaintiffs concede that a state's immunity may be waived to the extent necessary to adjudicate the claims made by the state, which would include counterclaims asserted defensively to defeat or reduce an affirmative recovery on the state's claim.  See Plntfs' Reply Mem. to Dismiss (Dkt. No. 174) at 2 (citing Jones v. Yorke (In re Friendship Med. Ctr., Ltd.), 710 F.2d 1297, 1300-01 (7th Cir. 1983).  Accordingly, the Court must determine the nature of the Nation's counterclaims, whether those claims require an affirmative recovery from the State, and whether permitting the claims to go forward would offend fairness and consistency principles and/or the principles underlying sovereign immunity.

The Court first determines if the Nation's counterclaims are compulsory or permissive. Federal Rule of Civil Procedure 13(a) defines a compulsory counterclaim as:

> any claim which at the time of serving the pleading the pleader has against any opposing
> party, if it arises out of the transaction or occurrence that is the subject matter of the
> opposing party's claim and does not require for its adjudication the presence of third parties

of whom the court cannot obtain jurisdiction.

FED. R. CIV. P. 13(a).  In contrast, permissive counterclaims are claims against an opposing party

that do not arise out of the transaction or occurrence that is the subject matter of the opposing

party's claim.  FED. R. CIV. P. 13(b).  When there is a "'logical relationship' between the

counterclaim and the main claim," the counterclaim arises out of the same transaction or occurrence

and is considered to be compulsory.  Jones v. Ford Motor Credit Co., 358 F.3d 205, 209 (2d Cir.

2004).  The "logical relationship" test does not require an absolute identity of factual backgrounds,

[instead] the essential facts of the claims must be so logically connected that considerations of

judicial economy and fairness dictate that all the issues be resolved in one lawsuit."  Id. (internal

quotations omitted).

Based on the "logical relationship" test, the Nation's counterclaims are compulsory.  The

Nation's Counterclaim seeks a declaration that IMG and Gaming Devices have been added to

Appendix A in accordance with the procedures established in the Compact.  Counterclaim (Dkt. No.

151) at ¶ 1.  In the alternative, the Nation seeks a declaration, and an award of relief pursuant to 25

U.S.C. § 2710(d)(7)(A)-(B), that the State has negotiated in bad faith with respect to requests to add

these games and has refused to agree to them only because the Nation will not give the State a

percentage interest in the games' revenue.  Id.  Plaintiffs explain that "the State's claims turn on the

interpretation of the Compact and an evaluation of New York State constitutional and administrative

law to determine if IMG was added to the Compact by action of the Board as an authorized game."

Plntfs' Reply Mem. to Dismiss (Dkt. No. 174) at 3.  Both Plaintiffs' claims and the Nation's

counterclaims require a determination of the procedures spelled out in the Compact related to the

addition of new games at Turning Stone.  Moreover, the Nation's claim that Plaintiffs did not

14

negotiate in good faith rests on a determination that the Board had not already properly approved IMG deployment under the Compact.  Therefore, while Plaintiffs seek a declaration that the Compact was not amended to include IMG, the Nation counters with a request that essentially seeks relief declaring that IMG was properly approved for deployment.  As a result, the Nation's counterclaims involve issues and circumstances that are identical to those raised by Plaintiffs' claims; therefore, the counterclaims must be considered logically related to Plaintiffs' claims and compulsory.

The Court also finds that allowing the counterclaims to go forward does not offend the principles animating sovereign immunity.  The Nation is not seeking an affirmative recovery; instead, it simply seeks a declaration that the Compact has been properly amended to include IMG and Gaming Devices.  Counterclaim (Dkt. No. 151) at Section C, ¶¶ (a), (b).  The Nation did not ask for judicial review, Plaintiffs initiated this action themselves.  Consequently, the Nation's counterclaims cannot be blamed for subjecting the State to the "indignity" of being haled into court.  Moreover, equitable principles countenance against the Court allowing Plaintiffs to bring the Nation to court while permitting Plaintiffs to raise the immunity shield to prevent the Nation from asserting counterclaims designed to defeat Plaintiffs' related claims.  See Lapides, 535 U.S. at 620 ("An interpretation of the Eleventh Amendment that finds waiver in the litigation context rests upon the Amendment's presumed recognition of the judicial need to avoid inconsistency, anomaly, and unfairness, and not upon a [s]tate's actual preference or desire, which might, after all, favor selective use of 'immunity' to achieve litigation advantages.").  As a result, the Court holds that Plaintiffs have waived their sovereign immunity and the Nation's counterclaims are not barred by the

Eleventh Amendment for purposes of this litigation.[1]

## 2.     The Nation's Counterclaims are Adequately Pleaded

A motion to dismiss should be granted only when "it appears beyond doubt that the plaintiff

can prove no set of facts in support of his claim that would entitle him to relief." McKenna v.

Wright, 386 F.3d 432, 436 (2d Cir. 2004).  When considering a motion to dismiss under Federal

---

[1] The Court does not need to address the alternative sovereign immunity theories advanced by both Plaintiffs and the Nation, and will only briefly address some of these arguments here.  The Nation asserts that sections 14(a) and 15(b)(4) of the Compact constitute waivers of Plaintiffs' immunity.  See Nation's Mem. in Response (Dkt. No. 164, Attach. 1) at 15-17.  Plaintiffs counter that section 14(a) only provides a waiver for suits seeking declaratory judgment that the Compact permits the activities in dispute, whereas, according to Plaintiffs, the Nation seeks to have an order requiring the State to negotiate in good faith and a declaration that IMG and Gaming Devices were properly added to Appendix A, which is not the same as seeking a declaration that the State properly authorized IMG.  Plntfs' Reply Mem. to Dismiss (Dkt. No. 174) at 4.  The Court is not convinced by Plaintiffs supposed distinction between the waiver contained in section 14(a) and the relief sought by the Nation.  The Nation essentially seeks a declaration that the Board properly approved IMG deployment, which is exactly what is allowed by section 14(a).

Plaintiffs also assert that section 15(b)(4) merely "preserves" Defendant's "right to seek relief under 25 U.S.C. § 2710(d)(7)(A)(i)," a section that the Supreme Court in Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996), found to be ineffective to abrogate a state's immunity and, consequently, cannot serve to authorize a tribe to sue a state in federal court.  Id.  However, in Seminole Tribe, the State of Florida did not initiate the action, as did the State in the instant action; instead, the Seminole Tribe, which had not signed a gaming compact with Florida as the Nation has in this case, sued the state under section 2710(d)(7)(A)(i) for its failure to respond to the tribe's request for compact negotiations.  See Seminole Tribe, 517 U.S. at 51.  The facts in Seminole Tribe are distinguishable from the instant action and do not necessarily foreclose the Nation from invoking the waiver contained in section 15(b)(4).  Nevertheless, it is unnecessary to analyze the Compact's language or the implication of Seminole Tribe on Plaintiffs asserted immunity because, as explained above, Plaintiffs have waived their immunity by initiating this litigation.  See discussion supra Section II.B.1(i).

Plaintiffs also claim that holdings in Saratoga County and Peterman mean that Governor Cuomo did not have the legislatively-approved authority to waive Plaintiffs' sovereign immunity.  Plntfs' Mem. in Support of Dismissal (Dkt. No. 161, Attach. 2) at 11.  The Court has held that it does not have jurisdiction to address the validity of the Compact, see discussion supra Section II.A.3, and because it is unnecessary to do so, the Court also declines to address Saratoga County and Peterman in connection with the sovereign immunity question.

Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6) motion"), the Court must accept the material facts alleged in a defendant's answer and counterclaims as true, and construe all reasonable inferences in the defendant's favor.  Weinstein v. Albright, 261 F.3d 127, 131 (2d Cir. 2001).  However, in a Rule 12(b)(6) motion, "'the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'"  Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998) (quoting Branham v. Meachum, 77 F.3d 626, 628 (2d Cir. 1996) (quoting Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995)).

Count One of the Nation's Counterclaim asserts that the State failed to negotiate the proposed IMG and Gaming Devices amendments in good faith.  Counterclaim (Dkt. No. 151) at Section C, ¶¶ 25-33.  Plaintiffs claim that the Nation does not allege that it ever requested or entered into negotiations with Governor Pataki or his designated representative.  Plntfs' Mem. in Support of Dismissal (Dkt. No. 161, Attach. 2) at 14.  Instead, Plaintiffs explain that the Counterclaim recites the Nation's discussions with the Board, and the Board's alleged approval of the amendment to the Compact, but acknowledges that thereafter the Governor informed the Nation that the State had not approved IMG.  Id.  According to Plaintiffs, when the Nation proceeded to deploy IMG without proper authorization, it breached the Compact and IGRA, which relieved Plaintiffs from any obligation to negotiate with respect to IMG.  Id.

The Nation's claim in Count Two seeks a declaration that Appendix A has been properly amended to include IMG and Gaming Devices.  Counterclaim (Dkt. No. 151) at Section B, ¶¶ 34-39.  Plaintiffs challenge the Nation's right to offer Gaming Devices under Compact sections 15(b)(1) and (2), which allow the Nation to offer games the State has permitted others to offer, in this case, the Seneca Nation (the "Senecas").  Plntfs' Mem. in Support of Dismissal (Dkt. No. 161,

Attach. 2) at 19.  Plaintiffs explain that the Nation: (1) makes no factual allegations that it followed the terms of the Compact that are required for the Nation to adopt games offered by the State to other parties; and (2) the Compact only allows the Nation to adopt the particular games that are offered to other parties, and not games that are "similar" to the previously adopted games.  Id. at 22.

Nevertheless, the Court agrees with the Nation that, at this stage of the litigation, Plaintiffs have not met their burden and that the Nation has alleged facts sufficient to survive Plaintiffs' Rule 12(b)(6) motion.  A substantial portion of this action revolves around the issue of whether the Board's approval of IMG deployment constituted the State's acceptance of the amendment to the Compact.  The Court must accept the material facts alleged by the Nation as true, and construe all reasonable inferences in its favor.  Weinstein, 261 F.3d at 131.  In connection with Count One, the Nation has pleaded that it submitted a request in conformance with the Compact to the Board's Chairman to amend the Compact to include IMG.  See Counterclaim (Dkt. No. 151) at Section B, ¶¶ 12-13.  While Plaintiffs disagree with this characterization, the action before the court has been brought to determine the validity of this claim.  Accordingly, at this stage in the litigation, the Nation has sufficiently alleged that it initiated negotiations with the State.  Furthermore, the Nation has also supported its claim of bad faith through its allegations that Plaintiffs tersely denied the proposed amendments to the Compact as part of an attempt to gain a portion of the gaming revenues.  See id. at ¶¶ 16, 22-23, 29, 30-31.

In spite of Plaintiffs' challenge, the Nation has also adequately pleaded allegations related to the deployment of Gaming Devices in Count Two.  The Nation has alleged that it adopted all the relevant, technical specifications related to Gaming Devices from the State's compact with the Senecas.  See id. at ¶¶ 21-22; Nation's Mem. in Response (Dkt. No. 164, Attach. 1) at 22.  Plaintiffs

18

claim that the Nation's letter adopting the Senecas' compact omitted paragraphs 9(c) and (d), which relate to the Senecas' right to exclusive deployment of certain gaming devices and revenue sharing, contained in Appendix A to the Seneca Compact.  Plntfs' Mem. in Support of Dismissal (Dkt. No. 161, Attach. 2) at 21.  The Nation disputes Plaintiffs' contention that paragraphs 9(c) and (d) qualify as "specifications" that must be adopted by the Nation for them to properly deploy Gaming Devices at Turning Stone under the Compact.  See Nation's Mem. in Response (Dkt. No. 164, Attach. 1) at 22-23.  Again, at this point in the instant action, the Court cannot dismiss a claim if it appears beyond doubt that the Nation can prove no set of facts in support of his claim that would entitle it to relief.  See McKenna, 386 F.3d at 436.  The dispute regarding the meaning of "specification" is a material issue, and the Nation's assertions cannot be easily dismissed.  Accordingly, Plaintiffs have not met their burden to prove that there is no circumstance under which the Nation could prevail.

At its essence, the subject of this action is to determine whether the Board's approval was adequate; however, at this stage, the Nation has a right to assert its legal claims and it is simply enough to allege adequate facts to support those claims, which it has done.  Counterclaim (Dkt. No. 151) at Section B, ¶¶ 16, 21, 22, 23.  Therefore, Plaintiffs' Motion to dismiss the Counterclaim is denied.

**C.     Plaintiffs' Appeal of Magistrate Judge Treece's Order Granting the Nation Leave to Depose Certain State Officials**

Following the expiration of the stay of this action, Plaintiffs filed an appeal of the November 9, 2001 order of the Honorable Randolph F. Treece, United States Magistrate Judge, granting the Nation leave to depose two former officials in former Governor Pataki's administration.  See Discovery Appeal (Dkt. No. 143).  For the following reasons, the Court agrees with Judge Treece

and affirms his decision.

### 1.   Background

Judge Treece found that former Associate Counsel to the Governor, Judith Hard, and former special advisor to the Governor, Michael Clemente, were not high-ranking officials who, under the relevant test, would be insulated from normal discovery.  See Treece Order (Dkt. No. 143, Attach. 4, Ex. 1) at 6-7.  Judge Treece also found that an assertion of attorney-client privilege did not shield Hard from being deposed by the Nation because Hard provided advice to Governor Pataki and communicated with other parties regarding discussions with the Nation in a manner that may not be covered by the privilege and, accordingly, are fertile areas of inquiry.  Id. at 9-11. In addition, Judge Treece also found that the executive deliberative privilege did not apply because the State's decision-making process is the subject of the suit, and, therefore, this privilege did not bar Hard or Clemente from being deposed.  Id. at 11-12.  Finally, Judge Treece held that the depositions sought information related to negotiations in the course of settlement generally subject to Federal Rule of Evidence 408 ("Rule 408"); however, the Nation was not seeking to ascertain Plaintiffs' litigation strategy, but instead sought evidence of the State's intent, which is a topic of inquiry that falls within the exception to Rule 408 that allows the admission of evidence when it is offered for a purpose other than proving or disproving liability on a claim.  Id. at 12-13.

### 2.   Discussion

#### a.   Standard of Review

On appeal, a district court may only reverse the decision of a magistrate judge "where it has been shown that the magistrate's order is clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A).  A magistrate judge's order is "clearly erroneous" when "although there is evidence to

support it, the court upon reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed." Mitchell v. Goord, No. 9:03-CV-19 (GLS), 2005 U.S. Dist. LEXIS 4772, at *6-*7 (N.D.N.Y. Mar. 21, 2005) (Sharpe, D.J.) (internal quotations omitted). An order may be "contrary to law" if "it fails to apply or misapplies relevant statutes, case law or rules of procedure." Id. Therefore, magistrate judges have broad discretion to regulate nondispositive matters, and the Court reviews Judge Treece's order pursuant to a very deferential standard. See id.

   **b.**  **Plaintiffs' Arguments on the Merits for Reversal of the Discovery Order**

    Plaintiffs assert that the Nation did not request to negotiate with the Pataki administration about the addition of IMG because of the Board's "purported approval" of the amendment to the Compact. See Plntfs' Mem. in Support of Appeal (Dkt. No. 143, Attach. 2) at 8-9. As a result of the Nation's alleged failure to even request to negotiate, Plaintiffs explain that the provisions of the IGRA relating to good faith negotiations of gaming compacts cannot be invoked and used to support the need for any discovery. See id. However, in order to find for Plaintiffs on this ground, the Court would have to determine that the Nation's dealings with the Board did not constitute negotiations and approval under the terms of the Compact. As discussed above, the Court has found that there is a sufficiently serious dispute, one that requires the Court to deny Plaintiffs' Motions on the merits, about whether the request submitted to the Board constitutes a request to negotiate under the Compact. See discussion supra Section II.B.2. Accordingly, Judge Treece properly declined to address these arguments in his order, see Treece Order (Dkt. No. 143, Attach. 4, Ex. 1) at 3, and this ground cannot serve as a basis to reverse that decision. See Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co., No. 90 Civ. 7811 (KC), 1993 U.S. Dist. LEXIS, at *10 (S.D.N.Y. Oct. 26,

1993) (discovery motion not proper forum for deciding the merits of a counterclaim).

In addition, Plaintiffs again argue that the state court decisions invalidating the gaming compacts make the issues addressed by Judge Treece's order irrelevant. See Plntfs' Mem. in Support of Appeal (Dkt. No. 143, Attach. 2) at 10; Plntfs' Reply in Support of Appeal (Dkt. No. 155) at 2-5. However, as previously discussed above, the Court does not have jurisdiction to address this argument, and, therefore, the discovery order and the issues raised therein are not moot. See discussion *supra* Section II.A.3.

### c.       Deposing High-Ranking Government Officials

The Court will only reverse Judge Treece's determination that Hard and Clemente were not high-ranking officials barred from being deposed if it is clearly erroneous or contrary to law. See 28 U.S.C. § 636(b)(1)(A). Both Plaintiffs and the Nation concede that there is no clear definition for who qualifies as a high-ranking official for purposes of being deposed in litigation involving the government. See Plntfs' Mem. in Support of Appeal (Dkt. No. 143, Attach. 2) at 12; Nation's Response in Appeal (Dkt. No. 152, Attach. 1) at 12. The Nation concedes that the majority of cases in the Second Circuit have found that officials serving as chief executives are considered high officials immune from deposition. Nation's Response in Appeal (Dkt. No. 152, Attach. 1) at 12.

In fact, the cases cited by Plaintiffs in support of their contention that courts in the Second Circuit routinely refuse to allow senior government officials to be depose support the Nation's characterization of Second Circuit precedent. See Plntfs' Mem. in Support of Appeal (Dkt. No. 143, Attach. 2) at 12. Plaintiffs cite, among others, the following cases in support of their position: Marisol A. v. Giuliani, No. 95 CIV. 10533(RJW), 1998 WL 158948, at *3 (S.D.N.Y. Apr. 1, 1998) (barring deposition of Governor Pataki subject to conditions); Marisol A. v. Giuliani, No. 95 CIV.

22

10533(RJW), 1998 WL 132810 (S.D.N.Y. Mar. 23, 1998) (denying deposition of Mayor Giuliani);

Universal Calvary Church v. City of New York, No. 96 CIV. 4606RPP, 1999 WL 350852, at *2

(S.D.N.Y. June 2, 1999) (granting protective order preventing deposition of Mayor Giuliani and two

former police commissioners); Friedlander v. Roberts, Nos. 98 Civ. 1684(RMB), 98 Civ.

8007(RMB), 2000 WL 1471566 (S.D.N.Y. Sept. 28, 2000) (finding Mayor Giuliani not subject to

deposition); and L.D. Leasing Corp. v. Crimaldi, No. 91-CV-2430(EHN), 1992 WL 373732, at *1

(granting protective order as to deposition of Mayor Dinkins).  These precedents do support denying

litigants the ability to depose high-ranking officials; however, in each case, the official was an

executive in charge of a jurisdiction or governmental unit.  While there might be some conflicting

precedent, Judge Treece's holding that non-executive officials Hard and Clemente are subject to

deposition is in keeping with ample precedent in the Second Circuit; as a result, there is no basis for

finding that decision to be clearly erroneous or contrary to law.

### d.   Assertion of Federal Rule of Evidence 408 Regarding Settlement Discussions

The Court agrees with the Nation that the admissibility of Hard's and Clemente's testimony

regarding discussions related to settlement does not bar the Nation from deposing them.  See

Nation's Response in Appeal (Dkt. No. 152, Attach. 1) at 14.  Federal Rule of Civil Procedure 26

("Rule 26(b)(1)") governs discovery and states that " [r]elevant information need not be admissible

at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible

evidence."  FED. R. CIV. P. 26(b)(1).  Courts have found that, while limiting the introduction at trial

of evidence regarding settlement negotiations, Rule 408 does not apply to discovery requests.  SEC

v. Downe, No. 92 Civ. 4092 (PKL), 1994 U.S. Dist. LEXIS 708 , at *16-*17 (S.D.N.Y. Jan. 27,

1994) (citing Morse/Diesel, Inc. v. Fidelity and Deposit Co., 122 F.R.D. 447, 449 (S.D.N.Y. 1988)

(collecting cases); Center for Auto Safety v. U.S. Dep't of Justice, 576 F. Supp. 739, 749 n.23

(D.D.C. 1983); 2 J. Weinstein & M. Berger, Evidence P 408[1] at 408-18 to 408-19 (1992)).

Therefore, there is no need to determine whether testimony related to the settlement discussions are

admissible pursuant to Rule 408; instead, it is simply enough to determine, pursuant to the standard

established in Rule 26(b)(1), whether the depositions in question may lead to evidence admissible at

trial.  See Downe, 1994 U.S. Dist. LEXIS 708, at *18.

     While Judge Treece unnecessarily addressed the admissibility question, he did find that the

Nation is seeking admissible evidence.  Treece Order (Dkt. No. 143, Attach. 4, Ex. 1) at 12-13.

Judge Treece concluded that the Nation is not requesting these depositions related to the settlement

discussions to prove or disprove liability of Plaintiffs' claim against the Nation, which is barred by

Rule 408.  Id. at 13.  According to Judge Treece, the Nation adequately showed that it sought

evidence that is admissible under an exception to Rule 408.  Id.  The Nation sought evidence to

determine whether Plaintiffs conducted the negotiation in bad faith - which is a critical element of

the Nation's Counterclaim - and not related to Plaintiffs' lack of liability in connection with their

initial claims against the Nation.  Id.  It was not clearly erroneous or contrary to law for Judge

Treece to allow the Nation to depose Hard and Clemente about the settlement discussions.

However, the Court does not now hold that any information related to the settlement discussions is

admissible at trial.  Nevertheless, Judge Treece's analysis of the admissibility of evidence regarding

the settlement discussions shows that the Nation's request is "reasonably calculated to lead to the

discovery of admissible evidence," which is all that is required to permit discovery related to

settlement to proceed at this stage.  See In re Initial Public Offering Secs. Litig., No. 21 MC 92

(SAS), 2003 U.S. Dist. LEXIS 23102, at *18-*19 (S.D.N.Y. Dec. 24, 2003) (". . . admissibility is not a prerequisite to discoverability, and the scope of relevance under Rule 26 is broader than under the Rules of Evidence").

**e.      Assertion of Executive Deliberative Privilege**

Plaintiffs argue that the Nation has requested to depose Hard and Clemente in order to discover the State's intent in filing this lawsuit against it, which, according to Plaintiffs, is information protected by the executive deliberative privilege.  See Plntfs' Mem. in Support of Appeal (Dkt. No. 143, Attach. 2) at 14.  Judge Treece found that the Nation sought evidence regarding Plaintiffs' intent as part of its effort to prove its bad-faith defense and counterclaim. Treece Order (Dkt. No. 143, Attach. 4, Ex. 1) at 11-12.  As a result, Judge Treece held that because the Nation's defense and counterclaim are directed at the State's intent, the executive deliberative privilege does not apply.  Id. (citing In re Subpoena Duces Tecum Served on the Office of the Comptroller, 145 F.3d 1422, 1424 (D.C. Cir. 1998).

The Court agrees with Judge Treece and finds that his holding in connection with Plaintiffs assertion of executive deliberative privilege is not contrary to law or clearly erroneous.  In a prior Order, the Court affirmed the decision of the Honorable Ralph W. Smith, United States Magistrate Judge, stating that the executive deliberation privilege did not apply to preclude discovery of portions of a document prepared by a former State employee.  See April 2002 Mem.-Dec. and Order (Dkt. No. 134).  In that Order, the Court held that the intent of the parties as to the meaning of the Compact is directly at issue, and, therefore, the deliberative process itself is in question.  Id. at 4.  As a result, the Court relied on In re Subpoena and found that the Nation was entitled to view materials that explain Plaintiffs' intentions during the negotiating process.  Id. at 5.  The Court's previous

finding still holds.  The Court again holds that because the State's intent is crucial to the outcome of this case, the executive deliberative privilege does not shield Hard and Clemente from being deposed.

**III.    Conclusion**

As discussed above, Plaintiffs have failed to meet their burden and their Motions for judgment on the pleadings and to dismiss the Counterclaims are denied.  Furthermore, Judge Treece's discovery order allowing the Nation to depose Hard and Clemente was not clearly erroneous or contrary to law and is affirmed.

Accordingly, it is hereby

**ORDERED**, that Plaintiffs' Motion for judgment on the pleadings (Dkt. No. 159) is **DENIED**; and it is further

**ORDERED**, that Plaintiffs' Motion to dismiss the Amended Counterclaim (Dkt. No. 161) is **DENIED**; and it is further

**ORDERED**, that Memorandum-Decision and Order, dated November 9, 2001, of the Honorable Randolph F. Treece, United States Magistrate Judge, granting the Nation leave to depose two former officials in former Governor Pataki's administration (Dkt. No. 126) is **AFFIRMED**; and it is further

**ORDERED**, that the Plaintiffs' appeal (Dkt. No. 143) is **DISMISSED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:        August 07, 2007
              Albany, New York

Lawrence E. Kahn
U.S. District Judge